## BRAWNER v. IRVIN.

### (Circuit Court, N. D. Georgia, E. D.    May 1, 1909.)

1. CIVIL RIGHTS (§ 13*)—STATUTORY PROVISIONS—ACTION FOR DAMAGES.

Rev. St. § 5510 (U. S. Comp. St. 1901, p. 3713), declaring that every person who, under color of any law, statute, ordinance, regulation, or custom, subjects an inhabitant of any state or territory to the deprivation of any rights, privileges, or immunities, secured or protected by the Constitution and laws of the United States or to different punishments, pains, or penalties, on account of his being an alien, or by reason of his color or race, than that prescribed for the punishment of citizens, shall be punished, is a penal statute, the infringement of which will not give rise to a civil action for damages.

[Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 11; Dec. Dig. § 13.*]

2. CIVIL RIGHTS (§ 13*)—STATUTES—CONSTRUCTION.

Rev. St. § 1979 (U. S. Comp. St. 1901, p. 1262), declares that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law. *Held*, that the rights, privileges, and immunities referred to were those secured by the Constitution and the laws of the United States and did not include the right of an individual to life, liberty, or property, which were primary rights within the protection of the state of which the individual is an inhabitant.

[Ed. Note.—For other cases, see Civil Rights, Dec. Dig. § 13.*]

3. COURTS (§ 282*) — FEDERAL COURTS — CONSTITUTIONAL QUESTIONS — FOURTEENTH AND FIFTEENTH AMENDMENTS.

The fourteenth and fifteenth amendments of the federal Constitution are limitations on the states and did not confer primary rights enforceable by a person of color in the first instance in the federal courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 282.*]

4. CIVIL RIGHTS (§ 1*)—STATUTES—CITIZENS—NEGROES.

Persons of African descent have the same, but no greater, rights than other citizens in the state where they make their home; the rights and privileges protected from infringement by Rev. St. § 1979 (U. S. Comp. St. 1901, p. 1262), and the infringement of which creates a cause of action for damages, being common to all citizens.

[Ed. Note.—For other cases, see Civil Rights, Dec. Dig. § 1.*]

5. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION.

The federal courts have no jurisdiction of an action for damages by a citizen of African descent against an Anglo-Saxon citizen of the same state for an alleged unlawful assault committed under color of executive authority.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 282.*]

E. C. Kinnebrew, for plaintiff.
Sam Olive, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge. The declaration in this case is as follows:

"The petition of Lula Brawner shows that W. H. Irvin has injured and damaged her in the sum of $5,000 under the facts set forth in the following paragraphs:

"Second. Said W. H. Irvin is a resident of Elbert county, Ga.

"Third. For that heretofore, to wit, on the 20th day of June, 1908, your petitioner was living in the city of Elberton in Elbert county, Ga., with her husband, William Brawner, and her children in her own house, attending to her domestic duties, at peace with all the world and demeaning herself as an orderly and law-abiding woman.

"Fourth. Your petitioner further shows that while at her home at the time and place mentioned in paragraph 3 of this petition and living in the condition therein set forth, the defendant in this case, W. H. Irvin, the then chief of police of the said city of Elberton, called your petitioner from her house into her yard, arrested her, and then and there maliciously and cruelly assaulted and beat her with a whip, cutting her flesh in scars, causing her much pain and suffering, all without fault on her part, and without any just cause or provocation.

"Fifth. When the said W. H. Irvin arrested petitioner as stated in paragraph 4 of this petition, and before whipping her, he charged her with having struck a child of his relatives, which charge petitioner then and there denied, and which she now avers to be wholly and absolutely untrue.

"Sixth. The defendant, after whipping petitioner as charged in paragraph 4 of this petition, locked her up in the city prison, immediately, kept her there for two hours, after which he discharged her from custody without preferring any charge against her and without requiring her to give bond for her appearance before any court.

"Seventh. As chief of police of the city of Elberton, the defendant has the power under the laws, ordinances, and regulations of the city government to arrest offenders and under certain conditions to put them in custody, and in treating petitioner as set forth in the foregoing paragraphs he was acting under color of his official authority, and subjected her to a different punishment from that prescribed for citizens by reason of her color.

"Eighth. The whipping of petitioner by the defendant was in an open and public manner, in the daytime. The people on neighboring lots being spectators, it subjected petitioner to great mortification.

"Ninth. The state courts of Elbert county have declined to prosecute the defendant after being asked by petitioner so to do. The grand jury took no action on the matter. Petitioner asks for redress under the Constitution and laws of the United States.

"Tenth. By reason of the unprovoked and aggravated character of the assault, the contempt of public justice displayed by the defendant in his usurpation of power, and the pain and mortification caused to petitioner, she prays that the court may allow her exemplary and punitive damages in this case.

"Eleventh. All of the foregoing happened to the injury and damage of petitioner as set forth in paragraph 1 of this petition."

Then follows the prayer for process.

Defendant has filed a plea to jurisdiction and demurrer.

It is sought to support this suit by section 5510, Rev. St. (U. S. Comp. St. 1901, p. 3713), which reads as follows:

"Every person who, under color of any law, statute, ordinance, regulation, or custom, subjects, or causes to be subjected, any inhabitant of any state or territory to the deprivation of any rights, privileges, or immunities, secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color or race, than are prescribed for the punishment of citizens, shall be punished," etc.

This, as will be seen, is a penal statute, so it could hardly be sufficient to support a civil suit.

Counsel for plaintiff further invokes section 1979, Rev. St. (U. S. Comp. St. 1901, p. 1262), which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It does not appear from the declaration in this case that the defendant has deprived the plaintiff of any rights, privileges, or immunities secured by the Constitution and laws of the United States. As is well understood, of course, the right of an individual to life, liberty, and property, and to be free from molestation, is primarily and originally the right of a citizen of the state of which the individual is an inhabitant. To bring a case within this section, it must appear that some right, privilege, or immunity secured by the Constitution and laws of the United States has been infringed. It is useless, of course, to attempt to support this proceeding under the fourteenth or fifteenth amendments to the Constitution of the United States. These are limitations upon the states. Nor is there any warrant for such procedure under the thirteenth amendment.

Without discussing all the cases since the Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394, I think the determination of this question is sufficiently found in Hodges v. United States, 203 U. S. 1, 27 Sup. Ct. 6, 51 L. Ed. 65. In that case the defendant was charged with conspiracy against certain persons named, "citizens of the United States of African descent, in the free exercise and enjoyment of rights and privileges secured to them and each of them by the Constitution and laws of the United States, and because of their having exercised the same." The facts charged were that the persons against whom the conspiracy was said to have been formed had made contracts to work for certain sawmill operators as laborers and workmen, and the conspirators threatened to injure them in their persons, and that the conspirators unlawfully marched and moved in a body, armed with deadly weapons, and threatened and intimidated the said workmen, for the purpose of compelling them to quit their employment and work at the sawmills; all this being done because they were colored men and citizens of African descent, contrary to the form of the statute, etc. There was a demurrer in the Circuit Court, which demurrer was overruled, and thereupon the case was taken directly to the Supreme Court of the United States on a writ of error. In the statement of the case preceding the opinion, the court refers, among other sections of the revised statutes, to two sections invoked, that is sections 1977 and 5508 (U. S. Comp. St. 1901, pp. 1259, 3712). In delivering the opinion of the court, Mr. Justice Brewer said:

"While the indictment was founded on sections 1977 and 5508, we have quoted other sections to show the scope of the legislation of Congress on the general question involved. That prior to the three post bellum amendments to the Constitution the national government had no jurisdiction over a wrong like

that charged in this indictment is conceded. That the fourteenth and fifteenth amendments do not justify the legislation is also beyond dispute, for they, as repeatedly held, are restrictions upon state action, and no action on the part of the state is complained of. Unless therefore the thirteenth amendment vests in the nation the jurisdiction claimed, the remedy must be sought through state action and in state tribunals subject to the supervision of this court by writ of error in proper cases."

The extract contained in the opinion in the Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394, from the opinion of Mr. Justice Washington in Corfield v. Coryell, 4 Wash. C. C. 371, 380, Fed. Cas. No. 3,230, is then quoted, as follows:

" 'The inquiry,' he says, 'is: What are the privileges and immunities of citizens of the several states? We feel no hesitation in confining these expressions to those privileges and immunities which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments; and which have, at all times, been enjoyed by citizens of the several states which compose this union, from the time of their becoming free, independent, and sovereign. What these fundamental principles are, it would be more tedious than difficult to enumerate. They may, however, be all comprehended under the following general heads: Protection by the government, the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject, nevertheless, to such restraints as the government may prescribe for the general good of the whole.' "

Further quotation is then given from the Slaughterhouse Cases (page 77 of 16 Wall. [21 L. Ed. 394]) as follows:

" 'It would be the vainest show of learning to attempt to prove by citations of authority that up to the adoption of the recent amendments no claim or pretense was set up that those rights depended on the federal government for their existence or protection, beyond the very few express limitations which the federal Constitution imposed upon the states—such, for instance, as the prohibition against ex post facto laws, bills of attainder, and laws impairing the obligation of contracts. But with the exception of these and a few other restrictions, the entire domain of the privileges and immunities of citizens of the states, as above defined, lay within the constitutional and legislative power of the states, and without that of the federal government.' "

The opinion then proceeds:

"Notwithstanding the adoption of these three amendments, the national government still remains one of enumerated powers, and the tenth amendment, which reads, 'the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people,' is not shorn of its vitality. True, the thirteenth amendment grants certain specified and additional power to Congress, but any congressional legislation directed against individual action which was not warranted before the thirteenth amendment must find authority in it."

In further discussing the matter, and after some reference to the proper definition of "slavery" and "involuntary servitude," Mr. Justice Brewer continues:

"It is said, however, that one of the disabilities of slavery, one of the indicia of its existence, was a lack of power to make or perform contracts, and that when these defendants, by intimidation and force, compelled the colored men named in the indictment to desist from performing their contract, they to that extent reduced those parties to a condition of slavery, that is, of subjection to the will of defendants, and deprived them of a freeman's power to perform his contract. But every wrong done to an individual by another, acting singly or in concert with others, operates pro tanto to abridge some of the freedom

to which the individual is entitled. A freeman has a right to be protected in his person from an assault and battery. He is entitled to hold his property safe from trespass or appropriation, but no mere personal assault or trespass or appropriation operates to reduce the individual to a condition of slavery."

The opinion then concludes:

"At the close of the Civil War, when the problem of the emancipated slaves was before the nation, it might have left them in a condition of alienage, or established them as wards of the government like the Indian tribes, and thus retain for the nation jurisdiction. over them, or it might, as it did, give them citizenship. It chose the latter. By the fourteenth amendment it made citizens of all born within the limits of the United States, and subject to its jurisdiction. By the fifteenth it prohibited any state from denying the right of suffrage on account of race, color, or previous condition of servitude, and by the thirteenth it forbade slavery or involuntary servitude anywhere within the limits of the land. Whether this was or was not the wiser way to deal with the great problem is not a matter for the courts to consider. It is for us to accept the decision, which declined to constitute them wards of the nation or leave them in a condition of alienage where they would be subject to the jurisdiction of Congress, but gave them citizenship, doubtless believing that thereby in the long run their best interests would be subserved; they taking their chances with other citizens in the states where they should make their homes."

The whole matter resolves itself therefore into this: A person of African descent has no more rights than a person of Anglo-Saxon descent. All are citizens, and persons of African descent, as is stated in the foregoing opinion, take their chances with other citizens in the states where they make their home, so that the rights, privileges, and immunities referred to in section 1979 are nothing peculiar to persons of African descent, but are common to all citizens.

Whatever wrong may have been inflicted upon the plaintiff in this case, and whatever rights she may have against the defendant in a court of competent jurisdiction, it is perfectly clear that this court has no jurisdiction in the case. The plaintiff and defendant are citizens and residents of this district, both, indeed, residing in the same town. Whatever rights the plaintiff has must be enforced therefore in the courts of the state. The declaration certainly makes no case in the courts of the United States.

The plea to the jurisdiction will be sustained.